IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ENCOMPASS INDEMNITY COMPANY,

               Plaintiff,

v.                                    CIVIL ACTION NO.  2:13-cv-05327

GEORGE JOSEPH JACOBS, JR., deceased
by G. Patrick Jacobs, Executor,

               Defendant.

MEMORANDUM OPINION AND ORDER

Pending is Plaintiff Encompass Indemnity Company's ("Encompass") motion for summary judgment.  At the pretrial and final settlement conference held on May 30, 2014, the parties agreed that there are no material facts in dispute related to the coverage issues addressed in this declaratory action and that this case could, therefore, be resolved by the Court's ruling on the pending motion for summary judgment.  (ECF 41; ECF 28 at 8.)  For the reasons that follow, Encompass's motion for summary judgment is **GRANTED**.

I.      *BACKGROUND*

The relevant facts are as follows.[1]

At the times relevant to this action, Encompass had issued to George Jacobs, Jr. ("Mr. Jacobs") and his wife Julia A. Jacobs, Policy No. 239822945 ("the Policy"), which policy provided, in pertinent part, for:  (1) motor vehicle coverage, including liability and uninsured and

---

[1] These facts are largely taken from the parties' agreed stipulations (ECF 37)—which stipulations are similar to the allegations set forth in the Estate's state-court Complaint (ECF 17-1 at 1−9) and Amended Complaint (ECF 17-3 at 1−12)—and from other materials presented with the parties' summary judgment briefing, including the insurance policy at issue (ECF 17-1 at 10−69; ECF 17-2; ECF 19-3).

underinsured motorist coverage; (2) homeowner liability coverage; and (3) personal umbrella coverage.  (ECF 1 at 3; ECF 17-1; ECF 19-3; ECF 43 at 3.)

On January 11, 2011, Mr. Jacobs was accosted by an intruder, later identified as Gary Mullins, while in the parking lot of a Kroger grocery store in the Kanawha City area of Charleston, West Virginia.  (ECF 37.)  Mr. Mullins forced his way into Mr. Jacobs' vehicle while it was parked in the parking lot and demanded money from Mr. Jacobs.  (*Id.*)

Mr. Jacobs was held in his vehicle for a period of time against his will and feared that he would be killed or seriously injured if he did not comply with Mr. Mullins' demands.  (*Id.*)  Mr. Mullins ordered Mr. Jacobs to leave the Kroger parking lot in order to travel to Mr. Jacobs' home, where Mr. Jacobs gave Mr. Mullins $1,800.  (*Id.*)

Mr. Mullins then demanded an additional $200, and Mr. Jacobs wrote a check in the amount of $200.  (*Id.*)  Thereafter, Mr. Mullins forced Mr. Jacobs to go a bank in Kanawha City, where Mr. Jacobs cashed the check and gave the money to Mr. Mullins.  (*Id.*)

Mr. Mullins then demanded that Mr. Jacobs return to the Kroger parking lot so that Mr. Mullins could retrieve his vehicle and leave.  (*Id.*)

Continuing over several months, Mr. Mullins demanded and took additional money from Mr. Jacobs at Mr. Jacobs' home.  (*Id.*)

Mr. Mullins was eventually indicted by a Kanawha County grand jury for kidnapping and other charges.  (ECF 17-3 at 7.)  On February 6, 2012, Mr. Jacobs testified against Mr. Mullins in the ensuing criminal trial.  (*Id.*)  On February 7, 2012, less than 24 hours after testifying, Mr. Jacobs passed away.  (*Id.*)  That same day, Mr. Mullins was found guilty of felony kidnapping

(*id.*), and, on November 29, 2012, he was sentenced by the Circuit Court of Kanawha County to a term of imprisonment of 25 years.[2]  (ECF 19-1.)

On January 10, 2013, G. Patrick Jacobs, as Executor for the Estate of Mr. Jacobs, who is the Defendant in this action ("the Estate"), filed a wrongful death civil action against Mr. Mullins in the Circuit Court of Kanawha County.  (ECF 17-1 at 1.)

At some point thereafter, the Estate placed Encompass on notice of an uninsured/underinsured motorist lawsuit and further suggested via correspondence that Encompass may have additional duties and/or obligations under the homeowners and umbrella provisions of the Encompass policy.  (ECF 1 at 3 ¶ 12; ECF 17-3 at 20−21.)

As a result of the Estate's underlying state action, Encompass filed this declaratory action, asking the Court to address the coverage issues concerning the Policy.  (ECF 1 at 3 ¶ 13.) Encompass moves for summary judgment asserting that the policy affords no coverage for the claims at issue in connection with the civil action against Mr. Mullins in the Circuit Court of Kanawha County and that it has no responsibility under the Policy to defend or indemnify Mr. Mullins.  (ECF 17 at 1; ECF 1 at 22.)

The Court has reviewed the parties' summary judgment briefing (ECF 17, ECF 18, ECF 19, ECF 20) as well as the additional response submitted by the Estate following the May 30, 2014, conference (ECF 43), and this matter is now ripe for decision.

## II.    SUMMARY JUDGMENT STANDARD AND APPLICABLE LAW

Summary judgment is proper where the pleadings, depositions, and affidavits in the record show that there is "no genuine issue as to any material fact and that the moving party is

---

[2] This conviction was affirmed by the Supreme Court of Appeals of West Virginia in a Memorandum Decision. (ECF 17-3 at 7.)  *See State v. Mullins*, No. 12-1460 (W. Va. Oct. 18, 2013).

entitled to a judgment as a matter of law."  Fed. R. Civ. P.  56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

West Virginia's substantive law applies to this diversity action.  *See Castillo v. Emergency Med. Assocs., P.A.*, 372 F.3d 643, 646 (4th Cir. 2004) (citing *Erie R.R. Co. v. Tompkins,* 304 U .S. 66 (1938)).

The Supreme Court of Appeals of West Virginia ("SCAWV") has explained that when a court construes the provisions of an insurance policy, the "[l]anguage in an insurance policy should be given its plain, ordinary meaning."  Syl. pt. 1 *Mylan Labs. Inc. v. Am. Motorists Ins. Co.*, 700 S.E.2d 518, 520, 524 (W. Va. 2010) (internal quotation marks and citation omitted). "Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended."  *Id.* at syl. pt. 2 (citation omitted).  "The mere fact that parties do not agree to the construction of a contract does not render it ambiguous.  The question as to whether a contract is ambiguous is a question of law to be determined by the court."  *Id.* at syl. pt. 4 (citation omitted).

### III.   DISCUSSION

Encompass seeks summary judgment and a declaration that it owes no duty under the Policy to provide coverage for the claims being asserted in connection with the Estate's state-court action against Mr. Mullins.  (ECF 17; ECF 18 at 1−2; ECF 20 at 1.)  In response, the Estate asserts that coverage is available under the motor vehicle segment of the Policy, the home segment of the Policy, and/or the personal umbrella segment of the Policy.  (ECF 19.)

As clarified on the record at the May 30, 2014, conference (ECF 41) and in the Estate's supplemental filing (ECF 43), the parties' principal disagreement lies with the meaning and application of the phrase "covered person" as used in these three segments of the Policy.

4

Namely, the Estate contends that Mr. Mullins is a "covered person" under each of these segments, and that, therefore, Encompass has a duty to provide coverage for acts committed by Mr. Mullins.[3]  (ECF 19 at 9.)

The Estate's argument is frivolous and warrants little discussion.

### A.  Motor Vehicle Segment

The Estate first claims that Mr. Mullins was a "covered person" under the motor vehicle provisions of the Policy.  (ECF 19 at 9.)  Specifically, the Estate argues that when Mr. Mullins kidnapped Mr. Jacobs from the Kroger parking lot[4] he was occupying or using the motor vehicle with permission from Mr. Jacobs.

For purposes of the motor vehicle segment, the term, "**[c]overed person(s)**"[5] means:

> (1) You [the policyholder] or any *family member* for the ownership, maintenance or use of any covered *motor vehicle*.
>
> (2)  Any other person *occupying* or using any covered *motor vehicle* with permission from you or a *family member*.
> . . .

(Emphasis in original.) (ECF 17-2 at 12; ECF 19 at 10; ECF 18 at 10.)[6]

---

[3] There is no dispute between the parties that Mr. Jacobs was a "covered person" under the Policy.  (ECF 18 at 7; ECF 19 at 8.)

[4] To the extent that Defendant makes reference to other incidents in which Mr. Mullins forced Mr. Jacobs to operate his vehicle to travel to a bank (ECF 19 at 4), the Court rejects any argument that coverage exists with respect to those incidents for the same reasons stated herein.

[5] Words or phrases produced in bold and italicized font are as they appear in the Policy, and refer to terms for which the Policy provides special meanings for particular segments.  (*See, e.g.*, ECF 17-2 at 12 "Definitions".)  Unless otherwise noted, such definitions are not important for purposes of the pending motion for summary judgment.

[6] The Court observes that although the parties have repeatedly reproduced this and other pertinent language from the Policy throughout their summary judgment briefing, they have frequently failed to provide citation to the record for that language or have provided only a citation to the entire Policy, which is over one hundred pages.  For clarity, the Court has endeavored to provide citation to the pertinent portions of the Policy that are in the record as well as to those identical portions reproduced in the parties' briefing.

The phrase "with permission" does not appear to be defined by the Policy, but "permission" means, as relevant here, "the act of permitting" or, alternatively, "authorization." Webster's Third New International Dictionary, 1683 (2002).   In turn, "permit" means, as pertinent here, "to grant leave for or the privilege of," "to give (a person) leave," or "to give leave."  *Id.*; *see also* Black's Law Dictionary (9th ed. 2009) (West), permission ("1.  The act of permitting.  2.  A license or liberty to do something; authorization.").

Here, according to the stipulated facts (which are largely in accord with the Estate's assertions in its state-court complaints) Mr. Jacobs drove the vehicle to his home to retrieve money for Mr. Mullins only after Mr. Mullins "accosted" Mr. Jacobs, "forced" his way into Mr. Jacobs' car, "demanded" money, "held" Mr. Jacobs "against his will," and caused Mr. Jacobs to "fear[] that he would be killed or seriously injured if he did not comply with Mr. Mullins' demands . . . ."

Simply put, these facts demonstrate the antithesis of permission, and the Court completely rejects the Estate's theory that under the Policy Mr. Mullins can said to be "using" a covered motor vehicle "with permission" when he kidnapped the policyholder in that motor vehicle and forced him to operate that vehicle under threat.

The Court is not persuaded by the Estate's contention that Mullins was "using" the vehicle with Mr. Jacobs' "permission" because Mr. Jacobs operated the vehicle himself, instead of, presumably, declining to follow Mr. Mullins' instructions.  Even crediting the proposition that Mr. Mullins could be understood to have been "using" the vehicle through Mr. Jacobs, such use was not with Mr. Jacobs' permission.  Rather, Mr. Jacobs' operation of the vehicle was compelled by the fear of death or serious injury if he did not comply.  An act of submission or

acquiescence is not akin to the granting of permission. Adopting the Estate's argument would be to read the phrase "with permission" completely out of the Policy.[7]

The Estate also cites "West Virginia's omnibus statute, W. Va. Code § 33-6-31(a)" as support for Encompass's obligation to provide coverage, explaining that this statute "affords coverage to any person using a vehicle with the name insured's permission."[8] (ECF 19 at 10−11; ECF 43 at 11.)

The SCAWV has explained:

> [S]ection 33-6-31(a) contemplates that the named insured must give express or implied permission to the person utilizing his vehicle before coverage is triggered. Thus, pursuant to West Virginia's omnibus statute, W. Va.Code § 33-6-31(a) (1998), a person must have the permission, express or implied, of the named insured or the insured's spouse to operate or move a motor vehicle

---

[7] The fact that Mr. Mullins was subsequently convicted of kidnapping, which includes as an element the "unlawful restraint" of another person, further supports the conclusion that Mr. Jacobs did not "permit" Mr. Mullins to use or occupy his motor vehicle when Mr. Jacobs operated the vehicle in response to Mr. Mullins's threat. *See* W. Va. Code § 61-2-14a ("Any person who unlawfully restrains another person with the intent . . . [t]o hold another person for ransom, reward, or concession; [or] [t]o transport another person with the intent to inflict bodily injury or to terrorize the victim or another person . . . shall be guilty of a felony . . . ."); *see also State v. Mullins*, No. 12-1460, at 3 n.3 (W. Va. Oct. 18, 2013) (reproducing the kidnapping instruction given to the jury in Mr. Mullins' trial).

[8] Specifically, the statute provides, in pertinent part:

> No policy or contract of bodily injury liability insurance, or of property damage liability insurance, covering liability arising from the ownership, maintenance or use of any motor vehicle, shall be issued or delivered in this state to the owner of such vehicle, or shall be issued or delivered by any insurer licensed in this state upon any motor vehicle for which a certificate of title has been issued by the division of motor vehicles of this state, unless it shall contain a provision insuring the named insured *and any other person*, except a bailee for hire and any persons specifically excluded by any restrictive endorsement attached to the policy, *responsible for the use of or using the motor vehicle with the consent, expressed or implied, of the named insured* or his or her spouse against liability for death or bodily injury sustained or loss or damage occasioned within the coverage of the policy or contract as a result of negligence in the operation or use of such vehicle by the named insured or by such person: Provided, That in any such automobile liability insurance policy or contract, or endorsement thereto, if coverage resulting from the use of a nonowned automobile is conditioned upon the consent of the owner of such motor vehicle, the word "owner" shall be construed to include the custodian of such nonowned motor vehicles. . . ."

(Emphasis added.)

7

> before coverage is triggered under a liability policy insuring the
> vehicle for injuries caused by that person's negligent operation of
> the vehicle.

*Collins v. Heaster*, 619 S.E.2d 165, 169 (W. Va. 2005) (internal quotations and citation omitted);

*cf.* Syl. pt. 1, *State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co.*, 175 S.E.2d 478 (W. Va. 1970)

("The purpose of an omnibus clause in an automobile liability insurance policy being to extend

coverage, *in proper circumstances*, to any person using the insured vehicle . . . .") (Emphasis

added.).

      To the extent that the Estate asserts that the omnibus statute provides an independent

basis for relief or that the statute compels a more expansive reading of the definition of "covered

person" in the Policy, the Court is not persuaded.  (ECF 43 at 10−11.)  For the reasons already

stated, Mullins was not a person using Mr. Jacobs' vehicle with Mr. Jacobs' permission or

consent, whether express or implied.

      Moreover, the Court wholly rejects the Estate's attempts to analogize Mr. Jacobs'

kidnapping to a situation in which the implied consent of a vehicle's owner exists as the result of

emergency situations such as the imminent risk of serious bodily harm to an occupant.  (ECF 43

at 10.)

      The SCAWV observed in *Collins* that,

> during certain extreme emergencies, such as driver incapacitation
> or the imminent risk of serious bodily harm to an occupant of the
> vehicle, circumstances may be sufficient to presume the implied
> consent of a vehicle's owner such that the substitute driver may be
> deemed a permissive user covered by the vehicle's liability policy
> pursuant to the provisions of West Virginia's omnibus statute . . . .

619 S.E.2d at 170.

      The SCAWV, however, clearly contemplated that a substitute driver could be deemed a

permissive user when that driver was operating the vehicle to *protect* the driver from serious

8

bodily harm.  *See id.* (noting that cases from other jurisdictions considering implied consent "involve circumstances where immediate action was necessary to avoid serious harm or risk of harm to the insured or another occupant of the vehicle").

That is not the situation presented here.  Rather, accepting for the purposes of argument that Mr. Mullins could be understood to have operated the vehicle through Mr. Jacobs, he did so to benefit himself by threatening Mr. Jacobs with serious bodily harm.  The Estate's attempt to analogize the situations strains credulity and the Court has no trouble concluding that this is not among the emergency situations contemplated by the SCAWV.[9]

Finally, the Court rejects the Estate's assertion that mandatory minimum liability coverage is available pursuant to the West Virginia Safety Responsibility Law, W. Va. Code. 17D-1-1, *et seq.*, because Mr. Jacobs was injured through the use of a covered vehicle.  (ECF 19 at 12-13; ECF 43 at 13-16.)

The West Virginia Safety Responsibility Law provides, as pertinent here, that an owner's policy of liability insurance:

> [s]hall insure the person named therein and any other person, as insured, using any such vehicle or vehicles *with the express or implied permission of such named insured*, against loss from the liability imposed by law for damages arising out of the ownership, operation, maintenance or use of such vehicle . . . .

W. Va. Code Ann. § 17D-4-12(b) (Emphasis added.)

Again, for the same reasons discussed above, the Estate's argument fails because Mullins was not using Mr. Jacobs' vehicle with the express or implied permission of Mr. Jacobs.[10]

---

[9] Indeed, in *Collins*, the SCAWV rejected the argument that the court should find a presumption of implied consent where a party moved an unoccupied vehicle out of the "zone of danger" of a house fire.  619 S.E.2d at 170.  In rejecting that argument, the SCAWV characterized it as an "expansive view of implied consent . . . ."  *Id.* at 169.  The Estate's theory here is *far* more expansive than that rejected by the SCAWV in *Collins*.

[10] The Court, therefore, has no occasion to reach the additional question of whether Mr. Jacobs was injured through the use of the vehicle.

Accordingly, the Court concludes that Mr. Mullins is not a "covered person" under the plain language of the motor vehicle segment of the Policy and that no West Virginia statute or other authority cited by the Estate compels a contrary conclusion.[11]   As such, Encompass has demonstrated that it has no liability under the motor vehicle segment of the Policy to defend or indemnify Mr. Mullins, and that, therefore, summary judgment is properly entered on its behalf.

### B.   Home Segment

Next, the Estate asserts that coverage is available under the home segment of the policy. (ECF 19 at 13−15; ECF 43 at 8.)   Again, resolution of this issue turns on the definition of "covered person" in this segment of the policy.

The home segment defines "covered person," as relevant here:   "with respect to any motor vehicle to which [this segment] applies . . . [o]ther persons using the vehicle on an ***insured location***[12] with [the policyholder's] permission."  (ECF 17-1 at 50; ECF 18 at 5; ECF 19 at 14.)

Because this definition includes the same "with permission" requirement as the definition of "covered person" under the Policy's motor vehicle segment, the Court rejects the Estate's arguments for the reasons already stated.   Accordingly, Encompass is also entitled to summary judgment as to any claim to defend or indemnify Mr. Mullins under the Policy's home segment.

---

[11]   It does not appear that the Estate has asserted any argument that coverage is available under the uninsured/underinsured ("UM/UIM") provisions of the Policy (ECF 19 at 9−13; ECF 43 at 8−16), although Encompass has repeatedly argued that such coverage does not exist.  (ECF 18 at 14−15; ECF 20 at 10−12.)  To the extent that such a claim is made by the Estate, however, the Court also rejects it.  As Encompass observes, the UM/UIM segment of the Policy provides for Encompass to pay compensatory damages that a "covered person" may be legally entitled to recover from the owner or operator of an uninsured or underinsured motor vehicle for bodily injury and property damage caused by an accident.  (ECF 18 at 14−15; ECF 17-2 at 48−49.)  Because Mullins is also not a "covered person" as defined in this segment of the Policy, no coverage exists.  (ECF 17-2 at 48) (defining "covered person" as, in part, "[a]ny other person occupying or using an insured motor vehicle *with your [the policyholder's] consent*, except when struck by, a vehicle owned by you or that person which is not insured for this coverage under this policy") (emphasis added).

[12] This Policy-defined phrase is not at issue here.  (ECF 17-1 at 50.)

*C. Umbrella Policy*

Finally, the Estate asserts that coverage is available under the personal umbrella segment of the Policy.

This segment indicates that Encompass will "pay damages for which a ***covered person*** becomes legally liable due to an ***occurrence*** resulting in ***personal injury***, ***bodily injury*** or ***property damage***, up to the limit of liability shown in the Coverage Summary for 'Personal Umbrella'." (ECF 17-1 at 29; ECF 18 at 17; ECF 19 at 17.)  The relevant definition for "covered person" under this segment is "any other person using of ***occupying*** any covered ***motor vehicle*** or watercraft with permission from you [the policyholder] or a ***family member***." (ECF 17-1 at 27−28; ECF 18 at 16; ECF 19 at 17.)

For the reasons already discussed, Mr. Mullins did not use or occupy Mr. Jacobs' motor vehicle with Mr. Jacobs' permission.  Accordingly, the Estate's argument with respect to the personal umbrella segment fails and Encompass is also entitled to summary judgment as to any claim to defend or indemnify Mr. Mullins' pursuant to this segment of the Policy.

*IV.     CONCLUSION*

The Estate's argument regarding the Policy's definition of "covered person" is not a "technical" or "creative" reading of the Policy—it is frivolous, and indeed among the most frivolous legal arguments that have ever been made to this Court.

The Estate's attempt to cast itself as a victim of Encompass's declaratory judgment action is unpersuasive.  (ECF 43 at 6.)  The Estate is correct that it was required to respond to Encompass's lawsuit.  The Estate is incorrect, however, that it was required to respond with a frivolous legal argument that resulted in over a year of litigation in this Court, as opposed to, for

example, acknowledging that coverage was not available under the Policy and proceeding in its state-court action against Mr. Mullins.

The Court has considered whether to order the Estate and defense counsel to show cause why they should not be sanctioned for challenging on frivolous grounds this declaratory judgment action. *See* Fed. R. Civ. P. 11(b), (c)(3). In consideration of the facts that Plaintiff has not so moved, that an entirely unnecessary amount of expense has already been borne by both parties, and that the Court has already expended significant resources on this civil action, the Court has decided against considering sanctions at this time.

Both the Estate and defense counsel are admonished, however, that such litigation significantly and unnecessarily increases the burden on this Court. It does so at the expense of other litigants, and is at odds with the expectations set forth in Fed. R. Civ. P. 11(b). The future pursuit of frivolous litigation in this Court will not be treated lightly.

For these reasons, Encompass's motion for summary judgment [ECF 17] is **GRANTED**. Additionally, in light of this disposition, the other pending motions in this case, including Encompass's motion in limine [ECF 24], the Estate's motion for leave to supplement the record with respect to Encompass's motion in limine [ECF 29], and the Estate's motion to correct the record [ECF 32], are **DENIED AS MOOT**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to the Estate (G. Patrick Jacobs, Executor of the Estate of George Joseph Jacobs, Jr., 6 Kit Road, Charleston, WV 25304) (*see* ECF 17-3 at 12).

ENTER:      August 15, 2014

_____

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE